**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

**TERRY L. JOHNSON**

**Plaintiff,**

**vs.** **CASE NO. 8:04-cv-1750-T-17MAP**

**SWITCH & DATA**
**MANAGEMENT COMPANY LLC,**

**Defendant.**
_________________________________________/

## ORDER

**THIS CAUSE** came before the Court on the Defendant's Motion for Summary Judgment, filed on August 1, 2005, pursuant to Fed. R. Civ. P. 56. (Dkt. 19); the Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment (Dkts. 23, 25); and the Defendant's authorized reply thereto (Dkts. 28). After considering the Motion, record, and applicable law, the Defendant's Motion is **granted** for the reasons set forth below. The following facts are taken as true for the purpose of resolving the pending motion.

## BACKGROUND

Plaintiff, Terry Johnson, is an African-American male. Defendant, Switch & Data Management Company, LLC, ("S&D") hired Plaintiff on August 6, 2001,as a Computer Assisted Design ("CAD") technician. Plaintiff's employment status with S&D was "at-will," meaning that either party could end the employment relationship at any time, for any reason. Plaintiff initially worked with Jesse Chase, another CAD technician, and reported to Roy Dickie, S&D's Vice President of Real Estate and Construction. In December 2001, Plaintiff's first employment evaluation was written by Chase, who rated Plaintiff's performance level as 3.0 on a 5-point scale. In the category of "Job Knowledge and Accuracy," Plaintiff was rated "Below Expectations," and it was noted that Plaintiff needed "to increase skills in AutoCAD and

Building One."[1] In the "Goals and Objectives" section of the December 2001 performance evaluation, Chase noted that the Plaintiff would need to "improve his ability to delegate and maximize floor space," "become proficient in use of Building One," and "advance toward assuming design responsibilities for several facilities."

In January 2002, Plaintiff was transferred to what S&D referred to as the "Design Team," where he worked under the supervision of Ron Mueller. The group into which Plaintiff transferred then became known as the Facility Design Group. Other S&D employees Brian Goodhead and Tom Huesgen were also reassigned to the Facility Design Group.[2] Plaintiff alleges that after beginning to report directly to Mueller, Plaintiff's work environment rapidly deteriorated. In June or July 2002, Mueller assigned Plaintiff to be the lead designer of S&D's new Denver facility.

On November 21, 2002, Plaintiff received a written Employee Disciplinary Review memorandum ("EDR memo") from Mueller, in which Mueller addressed perceived deficiencies in Plaintiff's work and discussed expectations for improvement in Plaintiff's work performance. At the end of the EDR memo, Mueller stated that "if you are not able to continually perform within these position expectations and goals, further disciplinary action up to and including termination will be taken." Plaintiff alleges that around the time of his reviews, Mueller would "invent" something for Plaintiff to do that would undermine his review. In addition, Plaintiff alleges that his colleagues did not receive the same pre-review scrutiny. On December 15, 2002, Plaintiff received his second annual performance evaluation; however, it was the first annual review from Mueller. Mueller rated Plaintiff's performance level as a 2.4 on a 5.0 scale. Mueller reiterated many of the criticisms of Plaintiff's performance that were addressed in the previous EDR memo. Mueller also noted several other problems with Plaintiff's work; however, Mueller also praised several aspects of Plaintiff's performance. Plaintiff believed the review was filled with so many misstatements and falsities that he refused to sign the review and responded to

---

[1]AutoCad and BuildingOne were the two software programs that Plaintiff used to perform his job functions.

[2]Goodhead and Huesgen were part of Plaintiff's peer group for the purposes of similarly situated employees.

each of Mueller's criticisms. Plaintiff alleges that subsequently, his relationship with Mueller became so strained that he could not approach him to discuss any concerns.

Defendant alleges that Plaintiff's performance did not improve even after Plaintiff's annual review in December 2002. In August 2003, Mueller created a set of "guidelines" or work units to measure the Design Group's performance. Plaintiff alleges that his colleagues were not subject to these "guidelines" and that they were created just as a way to test whether Plaintiff should be terminated. However, Defendant alleges that these guidelines were reliable monitors of Plaintiff's performance and that Mueller tested them on himself as well as Tom Huesgen. On August 14, 2003, Mueller presented Plaintiff with a disciplinary warning notice and gave him thirty days to prove himself. Defendant alleges that Plaintiff's performance showed no improvement, and on September 12, 2003, S&D terminated Plaintiff's employment. Plaintiff subsequently filed a claim with the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on race. The EEOC subsequently issued a right-to-sue notice.

On July 29, 2004, Plaintiff filed suit alleging discrimination in employment based on race pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), the Civil Rights Act of 1991, 42 U.S.C. § 1981 ("section 1981"), and the Florida Civil Rights Act of 1992 ("FCRA").

The Defendant now moves for summary judgment, arguing that S&D had legitimate, non-discriminatory reasons for terminating Plaintiff's employment and that Plaintiff cannot prove pretext. S&D asserts, therefore, that it is entitled to judgment as a matter of law because there is no genuine issue of material fact.

## STANDARD OF REVIEW

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-324 (1986). Issues of fact are genuine "only if a reasonable jury considering the evidence presented could find for the non-moving party." *Anderson*

*v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Material facts are those that would affect the outcome of the trial. *Id.* at 248.

The evidence presented must be construed in favor of the non-moving party, and that party must receive the benefit of all favorable inferences that can be drawn from that party's evidence. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Evans v. Meadow Steel Products, Inc.*, 579 F. Supp. 1391, 1394 (N.D. Ga. 1984). The Court's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial, summary judgment should be granted. *See Jones v. Gerwens*, 874 F.2d 1534, 1538 (11th Cir. 1989) (citing *Celotex*, 477 U.S. at 324-325).

**DISCUSSION**

The Defendant argues that the undisputed evidence firmly establishes that S&D terminated Plaintiff for deficient performance. In addition, the Defendant argues that Plaintiff cannot provide evidence sufficient for a rational jury to conclude that S&D's termination of Plaintiff for performance-related reasons was pretextual.

When direct evidence is not present to prove existence of discrimination without inference or presumption, a plaintiff can rely on circumstantial evidence to prove discriminatory intent using the framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313,1316 (11th Cir. 2003); *Holifield v. Reno*, 115 F.3d 1555, 1561-1562 (11th Cir. 1997). "Under *McDonnell Douglas*, a plaintiff establishes a prima facie case of race discrimination under Title VII by showing: (1) he belongs to a racial minority; (2) he was subjected to adverse job action; (3) his employer treated similarly situated employees outside his classification more favorably; and (4) he was qualified to do his job." *Id.* Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the inference that the plaintiff was the subject of intentional race

discrimination by presenting legitimate, non-discriminatory reasons for its employment action. *Holifield*, 115 F.3d at 1564 (citation omitted). “This intermediate burden is ‘exceedingly light.’” *Id.* (citation omitted). Then, once the defendant meets this burden, the plaintiff must “demonstrate that the defendant’s articulated reason for the adverse employment action is a mere pretext for discrimination.” *Id.* at 1565. “Put another way, once the employer succeeds in carrying its intermediate burden of production, the ultimate issue in the case becomes whether the plaintiff has proven that the employer intentionally discriminated against him because of his race.” *Id.* (citation omitted).

For the purposes of the instant motion, Defendant has assumed that the Plaintiff can establish a prima facie case of discrimination because Plaintiff’s job duties were ultimately assigned to a person outside his protected class (non-black). (Dkt. 19 at 13, n. 5). In addition, Plaintiff concedes for the purposes of the instant motion that the Defendant can establish legitimate, non-discriminatory reasons for its adverse action. (Dkt. 23-1 at 6). Therefore, the issue on summary judgment centers on whether there is sufficient evidence of record to establish that the Defendant’s termination of Plaintiff was pretextual.

“The inquiry into pretext centers upon the employer’s beliefs, and not the employee’s own perceptions of his performance.” *Holifield*, 115 F.3d at 1565 (citations omitted). “Thus, where the employer produces performance review and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee’s assertions of his own good performance are insufficient to defeat summary judgment, in the absence of other evidence.” *Id.* (citation omitted). In essence, the Plaintiff must have presented this Court with evidence other than his own testimony that the Defendant’s stated reasons for terminating Plaintiff are not credible. To satisfy the threshold showing of pretext, “a plaintiff may discredit the employer’s proffered legitimate reasons by showing (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employment decision, or (3) that they were insufficient to motivate the employment decision.” *Robertson v. The Home Depot (U.S.A.), Inc*., 976 F. Supp. 1467, 1475 (S.D. Fla. 1997) (citation omitted). The Court is not persuaded by Plaintiff’s arguments and finds that the proffered reasons had basis in fact,

motivated the employment decision, and were sufficient to motivate the employment decision, for the reasons set forth below.

First, the Plaintiff argues that there is sufficient evidence of record to raise doubt as to S&D's stated reasons for termination of poor performance, because the Plaintiff testified that his performance was consistently excellent to outstanding at prior jobs where he performed similar tasks to his job at S&D. However, these statements are the Plaintiff's own assertions of his good performance, and are not sufficient to overcome the Defendant's documentation of poor performance. Furthermore, the issue in this case is whether Plaintiff was meeting S&D's legitimate employment expectations at the time of his termination, not whether he performed well at past jobs. *See Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 329 (7th Cir. 2002) (citing *Karazanos v. Navistar Intern. Transp. Corp.*, 948 F.2d 332, 336 (7th Cir. 1991); *Ferrell v. Masland Carpets, Inc.*, 97 F. Supp. 2d 1114, 1124 (S.D. Ala. 2000) ("To demonstrate that she was qualified, Ferrell must produce evidence which shows that she was meeting Masland's legitimate performance expectations *at the time of her discharge*.) (emphasis added).

Plaintiff also argues that favorable employment reviews during his employment with S&D raise genuine doubt as to S&D's stated reason of termination for poor performance. Specifically, Plaintiff alleges that his work was praised by Mr. Browning, a Vice President, and Mr. Marzi, Mueller's supervisor; additionally, Plaintiff argues that Mueller's own judgments about Plaintiff's performance are incoherent because in several instances Mueller gave Plaintiff the role of lead designer even though he was reporting Plaintiff's performance as poor. Again, Plaintiff's assertions that his work was praised by Mueller's superiors are Plaintiff's own assertions of his good performance and are not sufficient to overcome Defendant's documentation of poor performance. In addition, pretext is not proven by evidence that the plaintiff disagrees with the employer's assessment of his performance. *See Fouraker v. Publix Super Markets, Inc.*, 959 F. Supp. 1504 (M.D. Fla. 1997).

Regarding the argument that Mueller's judgments were incoherent, it is true that courts have held that a plaintiff can "establish pretext by showing 'weaknesses, implausibilities,

inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons' such that a fact finder could 'infer that the employer did not act for the asserted non-discriminatory reasons.'" *See Santiago-Ramos v. Centenniel Wireless P.R. Corp.*, 217 F.3d 46, 56 (1st Cir. 2000) (citations omitted). However, in establishing pretext through incoherencies, the Plaintiff must still provide evidence that it is likely that discrimination was the true reason for termination because there is no valid reason for the employer's actions. *See Nix v. WLCY Radio*, 738 F.2d 1181, 1184 (11th Cir. 1984). The Court is not persuaded that Plaintiff has done so. The Plaintiff alleges that Mueller gave Plaintiff the role of lead designer on a number of instances; however, the Court finds that the record reflects that the Plaintiff was given a "lead" job on two instances—Denver, and a job in Tampa. Moreover, reviewing an employee's job performance, whether positive or negative, whether acting in a "lead" role or not, is not inconsistent or incoherent with normal business management practices. Plaintiff has not offered significantly probative evidence to support a finding that Mueller or S&D was acting incoherently or inconsistently in assigning Plaintiff tasks or reviewing his performance.

Next, Plaintiff argues that the evidence is conflicting because Plaintiff's peers perceived his work performance as favorable. First, the record in the instant case leaves questions as to whether the opinions of Plaintiff's peers are even favorable. However, Plaintiff's peers' opinions regarding his work performance are irrelevant in determining whether the Plaintiff was terminated based on race because Plaintiff's peers were not in supervisory positions over the Plaintiff and nowhere in the record does it state that they were privy to any information regarding Plaintiff's performance evaluations. "The biases of one who neither makes nor influences the challenged personnel decision are not probative in an employment discrimination case," *Holifield*, 115 F.3d at 1563-1564; thus, "the favorable reviews of non-decision makers are irrelevant to the challenged employment action." *Gaddis v. Russell Corp.*, 242 F. Supp. 2d 1123, 1138 n.12 (M.D. Ala. 2003).

Finally, Plaintiff's strongest argument is that Mueller created a "work unit" test specifically to test Plaintiff's productivity. Plaintiff alleges that he was singled-out for a thirty-

day test that Mueller had never before used and has never since used to test an employee's performance. Plaintiff further alleges that Mueller attempted to overcome evidence of disparate treatment by setting up an artificial comparison between Plaintiff, Tom Huesgen, and Frank Costa, two similarly situated non-black employees. Plaintiff argues, however, that any comparison with Huesgen was materially flawed because Huesgen had knowledge of the test and its purpose, Huesgen worked at home without any of the same pressures facing Plaintiff, and Huesgen was a long-time friend of Mueller; Plaintiff argues that the comparison to Costa was flawed because the tasks given to Costa were very simple, repetitive learning tasks and not commensurate with the tasks given to Plaintiff.

However, the Defendant has produced documentary evidence showing that Plaintiff was not the only designer required to complete work under guidelines; rather, guidelines were set that required all of the designers to create twenty-four work units per day. (Dkt. 17-3, Exh. A). Although Mueller monitored and compared the Plaintiff with Huesgen, a member of Plaintiff's peer work-group, Plaintiff was given notice on August 14, 2003, of the quantity and quality of the work that was expected of him, which was the same performance level as expected from all the members of Plaintiff's work-group. (Dkt. 17-3, Exh. G). Further documentation provided by Defendant demonstrates that the Plaintiff was not meeting his daily expected performance. (Dkt. 17-3, Exh. I). The Court can only conclude that twenty-four units per day was a legitimate employment expectation, since guidelines were set that required all designers to complete twenty-four work units each day. It is well-settled that an employer can terminate an at-will employee for a good or bad reason, a reason based on erroneous facts, or for no reason at all, as long as the action is not a discriminatory one. *Damon v. Fleming Supermarkets of Fla.*, 196 F.3d 1354, 1361 (11th Cir. 1999); *Nix*, 738 F.2d at 1187. Whether twenty-four units per day was a reasonable number for S&D to require of their designers is not for the Court to decide, but it was not discriminatory for them to do so.

In conclusion, the Court finds that Plaintiff has failed to present any evidence demonstrating that S&D's proffered explanation of termination based on poor performance is

pretextual. Accordingly, it is

**ORDERED** that the Defendant's Motion for Summary Judgment (Dkt. 19) is hereby **GRANTED**, and the Clerk of Court is **DIRECTED** to enter Judgment for the Defendant and close the case.

**DONE AND ORDERED** in Chambers at Tampa, Florida, this 14th day of November 2005.




Copies to: All parties and counsel of record